OPINION
{¶ 1} On January 31, 1992, appellant, John Mishler, and appellee, Frances Mishler, were granted a divorce. Incorporated into the divorce decree was the parties' separation agreement wherein the parties provided for the distribution of appellant's pension plan pursuant to a subsequent Qualified Domestic Relations Order (hereinafter "QDRO"). A QDRO was filed on March 8, 1995, stating appellee was entitled to fifty percent of the accrued benefits earned by appellant as of the date of the divorce decree.
 {¶ 2} Appellant retired in November of 2002. Appellant's pension plan, Central States, Southeast and Southwest Areas Pension Fund, notified appellee that she would be receiving $131 of appellant's $3,000 monthly benefit.
 {¶ 3} On September 23, 2003, appellee filed a motion to amend the QDRO, requesting "the traditional coverture fraction of the benefits and accumulated interest which was intended" in the separation agreement. On September 26, 2003, the trial court (Judge James) signed and filed an amended QDRO.
 {¶ 4} On January 12, 2004, appellee filed a motion to amend the amended QDRO to include administrative changes requested by Central States. On same date, the trial court (Judge James) signed and filed a second amended QDRO.
 {¶ 5} On January 20, 2004, appellant filed a motion for relief from judgment from the January 12, 2004 QDRO. A hearing before Judge Stucki was held on February 17, 2004. By judgment entry filed February 18, 2004, the trial court denied the motion.
 {¶ 6} On March 30, 2004, appellee filed a motion to amend the second amended QDRO to include additional changes required by Central States. On April 1, 2004, the trial court (Judge Hoffman) signed and filed a third amended QDRO.
 {¶ 7} On April 7, 2004, appellant filed a motion to vacate the April 1, 2004 QDRO. By judgment entry filed same date, the trial court (Judge Stucki) vacated the third amended QDRO and set a hearing on the second amended QDRO for May 24, 2004. Following the hearing, the trial court (Judge Stucki) again vacated the third amended QDRO.
 {¶ 8} Appellee filed an appeal. By opinion and judgment entry dated February 14, 2005, this court reversed the trial court's decision. See, Mishler v. Mishler, Stark App. No. 2004CA00203,2005-Ohio-634.
 {¶ 9} On March 1, 2005, appellant filed a motion for relief from judgment claiming lack of subject matter jurisdiction and due process. By judgment entry filed April 13, 2005 the trial court (Judge Stucki) denied the motion.
 {¶ 10} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 11} "THE TRIAL COURT FAILED TO RETAIN JURISDICTION WITH REGARD TO THE PENSION MAKING THE THREE AMENDED QDROS VOID ABINITIO."
 II {¶ 12} "THE TRIAL COURT ERRED BY REFUSING TO VACATE THE THREE AMENDED QDROS DUE TO THE LACK OF NOTICE AND A HEARING ON THE PROPRIETY OF THE AMENDMENTS."
 III {¶ 13} "APPELLEE FAILED TO INVOKE THE CONTINUING JURISDICTION OF THE TRIAL COURT PURSUANT TO OHIO CIVIL RULES OF PROCEDURE RULE 75 AND THEREFORE THE TRIAL COURT ERRED BY FILING THE THREE AMENDED QDROS."
 {¶ 14} Before addressing the assignments of error, it is necessary to review the record from the previous notice of appeal filed June 23, 2004. Upon two remands from this court, the trial court attempted to address two pending motions for nunc pro tunc judgment entries.
 {¶ 15} By letter dated June 17, 2004, appellant herein, defendant and appellee on remand, filed a motion for a nunc pro tunc judgment entry with a proposed entry attached. The entry sought to vacate the first and second amended QDROs. The trial court conducted a hearing and ordered, "Appellee's Motion for Nunc Pro Tunc Judgment Entry (this is plaintiff's 7-16-4 MOTION FOR NUNC PRO TUNC JUDGMENT ENTRY) is: SUSTAINED." See, Judgment Entry filed September 13, 2004.
 {¶ 16} On June 23, 2004, appellee herein, plaintiff and appellant on remand, filed a motion for nunc pro tunc judgment entry seeking to correct omissions in the second amended QDRO. By judgment entry filed September 22, 2004, the trial court overruled the motion.
 {¶ 17} In this court's February 14, 2005 opinion at ¶ 25, we determined the trial court erred in vacating the third amended QDRO, and determined the second amended QDRO filed on January 12, 2004 was the one in effect because no appeal had been taken:
 {¶ 18} "Appellee never appealed the original amended QDRO or the amended ones thereafter. A motion to vacate may not be used as a substitute for appeal. Doe v. Trumbull County Children'sServices Board (1986), 28 Ohio St.3d 128. Therefore, the first amended QDRO stands but is administratively ineffective. The second amended QDRO attempted to fix the errors, but further errors existed. The third amended QDRO attempted to fix the additional errors, but the trial court vacated this QDRO, finding the matter was determined by the denial of appellee's motion to vacate the second amended QDRO. What is in effect now is administratively ineffective."
 {¶ 19} Despite the trial court's September 2004 rulings on remand, there still existed numerous errors and no journalized nunc pro tunc entry. As for the trial court's September 13, 2004 judgment entry, there was no July 16, 2004 motion to rule on and the parties therein were identified incorrectly. Therefore, this court rejected these attempts and found the second amended QDRO to be in effect. This is the law of the case as it stands prior to this appeal. It is from these numerous procedural debacles that we now address the assignments of error sub judice.
 I, II, III {¶ 20} Appellant claims the trial court lacked jurisdiction to amend the original March 8, 1995 QDRO as the trial court did not specifically reserve jurisdiction to amend it; therefore, the three amended QDROs are void ab initio. We disagree.
 {¶ 21} The trial court has the inherent power to interpret and enforce its own orders. Steineck v. Steineck (June 3, 1993), Tuscarawas App. No. 92AP110080. Such interpretations are within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983)5 Ohio St.3d 217.
 {¶ 22} The March 8, 1995 QDRO provided for a limited retention of jurisdiction as follows:
 {¶ 23} "The Court shall retain jurisdiction to amend this Order upon motion of any party, but solely for the purpose of establishing or maintaining its status as a Qualified Domestic Relations Order; no amendment of this Judgment Entry shall require the Plan to provide any type or form of benefit or any option not otherwise provided under the then applicable terms of the Plan."
 {¶ 24} Within this QDRO, the trial court distributed the pension benefits as follows:
 {¶ 25} "It is ORDERED, ADJUDGED, and DECREED that the Alternate Payee's share of the Participant's accrued benefit shall be Fifty percent (50.00%) of the accrued benefits earned by the Participant as of January 31, 1992. However, if the Alternate Payee receives benefits before the Participant, and before the Participant's normal retirement age (65), the amount assigned to the Alternate Payee cannot exceed the actuarial present value of the Participant's accrued benefit as of the Alternate Payee's benefit effective date."
 {¶ 26} The language of the second amended QDRO filed January 12, 2004 stated the following:
 {¶ 27} "It is further ORDERED, ADJUDGED, and DECREED that the Alternate Payee shall be entitled to fifty percent (50%) of a fraction of the monthly benefit which may be payable to the Participant under the Pension Plan as of the date the Alternate payee elects to commence her share of the benefits. The numerator of which is the number of months of the Participant's participation in the plan earned from December 11, 1971, the beginning of the marriage and the denominator of which is the total number of months of the Participant's participation in the Plan as of the earlier of his date of cessation of benefit accrual or the date the Alternate Payee commences benefits.
 {¶ 28} "It is further ORDERED, ADJUDGED, and DECREED that Effective upon the execution of this QDRO, the Administrator of the Plan (the `Administrator') shall divide the amount allocated to Participant's account into two parts, one such part to be known as Part A and the other part to be known as Part B. Contemporaneously with the division of said allocation, Participant assigns to Alternate Payee Part A, which part shall consist of 50% of Participant's interest as of January 31, 1992, plus all interest, dividends, earnings, forfeiture allocations, market appreciation or market decline, as the case may be, accumulating on said 50% from January 31, 1992 until Alternate Payee commences benefits."
 {¶ 29} The second amended QDRO language provides for the use of a coverture fraction as is the contemporary language in QDROs. The ultimate question is whether this language altered the plan's distribution beyond the scope of the limited jurisdiction.
 {¶ 30} It is conceded that there is a mathematical difference in the amounts of the original QDRO and the second amended QDRO. However, the issue is the proper interpretation of the separation agreement and divorce decree order which the QDRO seeks to fulfill. No objection to the jurisdiction of the trial court to so amend had been raised on the previous appeal. In fact, appellant herein defended the trial court's actions and jurisdiction in the previous appeal wherein he was the appellee. In defense of appellant's position, the assignment of error in the previous appeal challenged the trial court's vacation of all the amended QDROs.
 {¶ 31} This appeal pertains to the trial court's April 14, 2005 judgment entry which states the following:
 {¶ 32} "Upon review of the reasons stated therein, it is clear that the Court of Appeals vacated this court's decision to vacate the third amended QDRO and entered final judgment. No order to remand this case to this court or to effect any other judgment, (eg, `for further proceedings consistent with this opinion') was made by the Court of Appeals. The Court of Appeals also referred to the fact that no appeals have been previously taken to the various orders of this court. They also referred to the fact that 60(B) relief is not to be used as a substitute for a direct appeal.
 {¶ 33} "Upon due consideration of the entire record in this matter including the argument of counsel, the entire pleadings file and transcripts of proceedings in light of the Court of Appeals Opinion and Mandate of 2-14-5, the court does OVERRULE and DISMISS the Defendant's March 1, 2005 Motion for Relief."
 {¶ 34} We find the jurisdictional argument is too late and as the trial court stated, the law of the case generated by this court's February 14, 2005 opinion, not appealed, stands, and the second amended QDRO is the one in effect.
 {¶ 35} Assignments of Error I, II and III are denied.
 {¶ 36} The judgment of the Court of Common Pleas of Stark County, Ohio, Family Court Division is hereby affirmed.
Farmer, J. Gwin, P.J. and Boggins J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, Family Court Division is affirmed.